UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

FRANK EGAN SMITH,

        Plaintiff,                      Case No. 1:14-cv-938

v.                                    Honorable Gordon J. Quist

CATHLEEN STODDARD et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

### Factual Allegations

Plaintiff Frank Egan Smith presently is incarcerated with the Michigan Department of Corrections and housed at the Oaks Correctional Facility (ECF), though the actions about which he complains occurred while he was housed at the Carson City Correctional Facility (DRF). He sues

the DRF Warden Cathleen Stoddard, and DRF Nurses J. Schad and E. McKenna, and Nurse Subrina Aiken, who is employed at Jackson Health Care Office Administration.

Plaintiff alleges that, on June 11, 2014, Dr. Scott L. Holmes, who is not a defendant, unilaterally stopped Plaintiff's noon dose of Norco 7.50 E.S. Plaintiff asked Nurse Eichorn why his noon medication had been discontinued, but she did not know. Plaintiff filed a health care request that same day, seeking a record review, which was signed by Nurse B. Platt. On June 17, 2014, Plaintiff filed a grievance about not having been consulted about the medication change and indicating that the change had caused pain and severe coughing. On July 2, 2014, Plaintiff received a Step I grievance response signed by Defendants Schad and McKenna, indicating that Plaintiff had been interviewed and the medical records examined by the grievance reviewers. The response indicated that Plaintiff had seen the doctor on June 9, 2014, two days before the medication change. The response also indicated that Plaintiff's mere disagreement with medical decisions did not substantiate his grievance. In addition, the grievance response noted that Plaintiff had been advised to file a health care request if he believed his medical needs were not being met. (Compl., docket #1, Page ID#6-7; Attach. B to Compl., docket #1-1, Page ID#18.)

Plaintiff asked D. Kline for a second-step grievance form. He filed a Step II grievance on July 8, 2014. In that grievance, Plaintiff alleged that Defendants Schad and McKenna had lied in suggesting that he had failed to file a health care request about his medication, and referencing his June 11, 2014 request. Defendant Nurse Subrina Aiken reviewed Plaintiff's Step II grievance. Aiken agreed that Plaintiff had submitted a health care request on June 11, and she noted that the request had been forwarded to the medical provider, who addressed Plaintiff's request for a special accommodation notice that would allow him to be placed on the ground floor. Plaintiff was transferred to ECF on July 11, 2014. Aiken indicated that Plaintiff should consult with ECF

medical staff about any continuing concerns. (Compl., docket #1, Page ID#8-10; Attach. D to Compl., docket #1-1, Page ID#20.) Plaintiff does not indicate whether he filed a Step-III grievance.

Plaintiff complains that Defendants Schad and McKenna should be punished for falsifying medical records by stating in their grievance response that Plaintiff had not filed a health care request. He seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff makes no factual allegations against Defendant Stoddard, except to indicate that, as the warden at DRF she had responsibility for the actions of her subordinates. Further, the only allegations Plaintiff makes against the remaining Defendants are that they improperly decided or misstated the facts in their responses to his grievances.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based

upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Stoddard, Schad, McKenna, and Aiken engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: November 6, 2014                /s/ Gordon J. Quist
                                       GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE